IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-cr-00853-WJ |
| | ) | |
| DAVID WELLINGTON and | ) | |
| JERRY SHROCK, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO JOINT MOTION TO DISMISS THE INDICTMENT

The United States hereby offers its Response to Defendant Wellington and Defendant Shrock's Joint Motion to Dismiss the Indictment (Doc. 41).  For the following reasons, the United States respectfully requests that the Court deny the Motion as to Count 1, Count 2, and Forfeiture Allegation 2, and grant the Motion as to Forfeiture Allegation 1.

## PROCEDURAL HISTORY

On May 27, 2021, a criminal complaint instituted before U.S. Magistrate Judge Jerry H. Ritter charged Defendant Jerry Shrock with a violation of 18 U.S.C. § 371, Conspiracy to Commit Tax Evasion and Defraud the United States.  Doc. 1.  A five-page sworn affidavit establishing probable cause accompanied the complaint.  *Id*.  The Complaint alleged a timeframe for the charge as 2006 until June 2, 2015.  *Id*.

On June 18, 2021, Defendant Shrock waived his right to have probable cause for the complaint determined in a preliminary hearing.  Doc. 7.

On June 23, 2021, a grand jury returned an indictment as to both Defendant Shrock and Defendant David Wellington.  Doc. 13.  In Count One, the indictment charged both defendants with Conspiracy to Defraud the United States, contrary to 18 U.S.C. § 371, between January 28,

2005, and March 14, 2017.  *Id.* at 3.  In Count Two, the indictment charged Defendant

Wellington with Operation of an Unlicensed Money Transmitting Business, contrary to 18

U.S.C. § 1960, from about November 28, 2006, until August 28, 2017.

On May 4, 2022, the defendants filed their Joint Motion to Dismiss the Indictment.  Doc.

41.  In their Motion, the defendants ask the Court to dismiss Count One of the indictment as

barred by the statute of limitations.  Defendant Wellington further asks the Court to dismiss

Count Two of the indictment for "failure to set forth elements," and due to the statute of

limitations.  The defendants also request that the Court dismiss the two forfeiture allegations.

## DISCUSSION

## I.      Count 1:  18 U.S.C. § 371, Conspiracy to Defraud the United States

### A.  *Law Regarding Applicable Statutes of Limitations*

In reviewing a motion to dismiss the indictment on statute of limitations grounds, courts

"test the indictment solely on the basis of the allegations made on its face, and such allegations

are to be taken as true."  *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1268 (10th Cir.

2018) (citation omitted).  An indictment alleging a conspiracy in violation of 18 U.S.C. § 371

must allege at least one overt act.  In the Tenth Circuit, a conspiracy indictment "must allege that

the conduct constituting the conspiracy fell within the statute of limitations[.]"  *United States v.

Stoner*, 98 F.3d 527, 533 (10th Cir. 1996), *adhered to in part on reh'g*, 139 F.3d 1343 (10th Cir.

1998).  When the indictment alleges that "the conspiracy was at work within the limitations

period and that during that period, the conspiracy was neither a project still resting in the minds

of the conspirators nor a fully completed operation no longer in existence," the indictment is not

subject to dismissal on its face.  *Stoner*, 98 F.3d at 534 (quotations omitted).  The government

may prove at trial overt acts other than those alleged in the indictment, and the "statute of

limitations may be satisfied by proof at trial of overt acts within the limitations period, even if

2

those acts are not the acts alleged in the indictment, as long as the indictment contains allegations within the limitations period and any variance does not affect the defendant's substantial rights." *Stoner*, 98 F.3d at 533.  Unless a defendant affirmatively withdrew from a conspiracy, "any of his co-conspirators' overt acts—not just his own acts—may be used to satisfy the statute of limitations as to him.  *United States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008).  The overt act itself need not be "criminal in character"; the "function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work[.]"  *Yates v. United States*, 354 U.S. 298, 334, 77 S. Ct. 1064, 1085, 1 L. Ed. 2d 1356 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (citation omitted).

In normal times, the applicable statute of limitations for Count 1 is 26 U.S.C. § 6531. This statute provides that, "for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner," the period of limitation shall be 6 years.  26 U.S.C. § 6531.  The statute further provides, "Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States."  *Id*.  A United States magistrate judge holds "all powers conferred or imposed upon United States commissioners by law," 28 U.S.C. 636(a)(1), as magistrate judges essentially have replaced the position of commissioners.

The statutes of limitations otherwise applicable to frauds against the United States are suspended under the Wartime Suspension of Limitations Act (WSLA) at certain times.  The statute provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. § 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the

> United States or any agency thereof in any manner, whether by conspiracy or not, … shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.

18 U.S.C. § 3287.  In 2001, Congress authorized "the use of the Armed Forces" in response to the terrorist attacks of September 11, 2001.  *See* Authorization for Use of Military Force, Pub.L. No. 107–40, 115 Stat. 224 (2001).  The following year, Congress authorized the President to use military force to "defend the national security of the United States against the continuing threat posed by Iraq" and "enforce all relevant United Nations Security Council resolutions regarding Iraq."  *See* Authorization for the Use of Military Force against Iraq (AUMF), Pub.L. 107–243, 116 Stat. 114 (2002).  These Authorizations have never been repealed, and no Presidential proclamation has declared the termination of hostilities.  *See United States v. Nishiie*, 996 F.3d 1013, 1028 (9th Cir. 2021), *cert. denied*, No. 21-6453, 2022 WL 1205873 (U.S. Apr. 25, 2022) ("Since no termination of hostilities has been announced, the suspension of the running of applicable statute of limitations now approaches two decades or more.").  The WSLA applies to "all frauds against the United States, including those unrelated to the war," and therefore applies to Count 1 of the indictment, which alleges a conspiracy to defraud the United States.  *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 613 (S.D.N.Y. 2013).  No "war nexus" is required.  *Nishiie*, 996 F.3d at 1027.  While there are policy concerns regarding this state of affairs, such concerns must be "subordinated to the WSLA's unambiguous language."  *Id*. at 1028.  The unambiguous language of the Act operates to suspend any statute of limitations otherwise applicable to Count 1 of the indictment.

## B.  The Nature of the Conspiracy Alleged

The indictment alleges a conspiracy around Defendant Wellington's operation of his business, National Business Services LLC.  Doc. 13.  Defendant Wellington and his business

partner, referred to in the indictment as UCC1, allegedly marketed their company as offering a method for clients to circumvent assessment and payment of income taxes.  Defendant Wellington and UCC1 would organize and register a limited liability company (LLC) under New Mexico state law on behalf of a client who sought to dissociate himself or herself from certain future income.  The corporate documents would identify National Business Services, Defendant Wellington, or UCC1 as the organizer or registered agent of the new LLC, but no publicly filed documents would identify the members of the LLC or its beneficial owners.  They would use the anonymous corporate documents to obtain an Employer Identification Number for the LLC, so that future IRS Forms 1099 would be associated with the anonymous LLC rather than its actual owner.  Finally, National Business Services and UCC1 would use the anonymous corporate documents to open a bank account for the LLC and provide the clients with pre-signed checks, debit cards, and online banking credentials, so that the client could make deposits and withdrawals without revealing his or her identity.

According to the indictment, Defendant Shrock was one such client of National Business Services.  Defendant Shrock had an outstanding IRS lien in the amount of about $1 million.  He engaged National Business Services to help him accrue income while avoiding the lien.  On or about January 7, 2011, National Business Services formed White Top Enterprise LLC on Defendant Shrock's behalf, using documents that did not identify Defendant Shrock.  On or about May 9, 2011, UCC1 opened a bank account for White Top Enterprise LLC, using documents that did not identify Defendant Shrock.  Between May 9, 2011, and June 2, 2015, Defendant Shrock deposited approximately $4,875,940 into the White Top Enterprise LLC account.  Defendant Shrock withdrew all that money, by way of at least about 405 checks, a

$352,216 wire transfer that UCC1 choreographed on his behalf, numerous ATM withdrawals, and finally a $13,386 withdrawal on June 2, 2015.

After the closure of the White Top Enterprise LLC bank account, on or about July 13, 2016, Defendant Wellington sent Defendant Shrock a letter offering to buy back any LLCs that Defendant Shrock no longer needed.  On or about March 14, 2017, Defendant Shrock sent UCC1 a text message requesting information about the execution of a federal search warrant for evidence relating to National Business Services.

### C.  Count 1 Is Not Time-Barred as to Defendant Wellington

As to Defendant Wellington, Count 1 of the indictment is not barred by the statute of limitations, first and foremost because the conspiracy alleged in Count 1 continued well past the date Defendant Wellington contends is the endpoint of the conspiracy.  Defendant Wellington contends that the six-year statute of limitations began to run on June 2, 2015.  Doc. 41, p. 9.  He claims that Defendant Shrock withdrew from the conspiracy on the date of overt act 4(i), which alleges that "On or about June 2, 2015, UCC1 closed the White Top Enterprise LLC bank account and withdrew approximately $13,386 on behalf of SHROCK."  Doc 13.  He further contends that overt acts 4(j) and 4(k) were not acts in furtherance of the conspiracy.  At least as to overt acts 4(i) and 4(j), he is incorrect.

Overt act 4(i) is not a withdrawal from the conspiracy by Defendant Wellington.  The indictment on its face alleges that the conspiracy continued from on or about January 28, 2005, until on or about March 14, 2017.  The indictment does not allege that any co-conspirator withdrew from the conspiracy.  To show the affirmative defense of withdrawal, a defendant bears the burden to prove that he took an "affirmative action to disavow or defeat the purpose of the conspiracy."  *Smith v. United States*, 568 U.S. 106, 113-14, 133 S. Ct. 714, 720-21, 184 L. Ed. 2d 570 (2013) (citation omitted) ("[A] defendant's membership in the conspiracy, and his

responsibility for its acts, endures even if he is entirely inactive after joining it.")  It would be a reversal of burdens to find that overt act 4(i) as an allegation is sufficient to carry either defendant's burden to prove withdrawal.  To the extent overt act 4(i) is evidence regarding anyone's withdrawal from the conspiracy, it would be Defendant Shrock's withdrawal, not Defendant Wellington's.  The conspiracy between Defendant Wellington and UCC1 continued after Defendant Shrock's account was closed, and no evidence or allegation suggests otherwise.

Overt act 4(j) alleges, "On or about July 13, 2016, WELLINGTON sent SHROCK a letter offering to buy back any LLCs SHROCK no longer needed."  This allegation describes an overt act in furtherance of the conspiracy, and therefore the statute of limitations did not commence running until at least July 13, 2016.  As described above, the indictment alleges that Defendant Wellington and UCC1 were in the business of providing New Mexico LLCs to clients who wished to elude the IRS.  Over act 4(j) shows that Defendant Wellington was still in that business as of July 13, 2016.  His purchase of unused LLCs is an effort to provide the unused LLC to a new client for the same purpose.  It is evidence that the conspiratorial enterprise is still in operation.  *See Yates*, 354 U.S. at 334.  Therefore, overt act 4(j) shows that the statute of limitations did not begin running until at least July 13, 2016, and the indictment filed on June 23, 2021, is timely within the six year statute of limitations.

As a second and alternative reason, Count 1 should not be dismissed as to Defendant Wellington because the limitations period has been suspended by the Wartime Suspension of Limitations Act.  This is true as a matter of law, and does not depend on any facts specific to Defendant Wellington or the allegations against him.

D.  *Count 1 Is Not Time-Barred as to Defendant Shrock*

As to Defendant Shrock, Count 1 of the indictment is not barred by the statute of limitations, first and foremost because the conspiracy alleged in Count 1 was filed within the

limitations period established by 26 U.S.C. § 6531.  For the reasons set forth above, the

allegation of overt act 4(i), being the closure of the White Top Enterprise LLC bank account on

June 2, 2015, does not itself carry Defendant Shrock's burden to show affirmative withdrawal.

The closure of a bank account, standing alone, shows that one criminal avenue had become

inactive, but does not constitute a disavowal of the criminal enterprise.  If Shrock "did not take

the affirmative steps necessary to withdraw from the conspiracy, any of his co-conspirators' overt

acts—not just his own acts—may be used to satisfy the statute of limitations as to him."  *United*

*States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008) (citing *United States v. Hauck*, 980 F.2d

611, 614 (10th Cir.1992).

   But even if overt act 4(i) did satisfactorily prove Defendant Shrock's withdrawal from the

conspiracy, the indictment was filed within the 26 U.S.C. § 6531 limitations period because the

May 27, 2021 Complaint added nine months to the limitations period.  *See* Doc. 1; 26 U.S.C.

§ 6531.  *See also United States v. Miller*, 491 F.2d 638, 645 (5th Cir. 1974) ("[T]he filing of a

sufficient complaint before expiration of the 6 year period extended the time within which the

Government could obtain an indictment for an additional nine months.").  The U.S. Supreme

Court has held that "the complaint, to initiate the time extension, must be adequate to begin

effectively the criminal process prescribed by the Federal Criminal Rules.  It must be sufficient

to justify the next steps in the process—those of notifying the defendant and bringing him before

the Commissioner for a preliminary hearing.  To do so the complaint must satisfy the probable

cause requirement of Rule 4."  *Jaben v. United States*, 381 U.S. 214, 220, 85 S. Ct. 1365, 1368–

69, 14 L. Ed. 2d 345 (1965).  The May 27, 2021 Complaint properly included a sworn affidavit

establishing probable cause for a violation of 18 U.S.C. § 371, as reviewed by a neutral

magistrate.  *See* Doc. 1.  To comply with § 6531, therefore, the indictment needed to be filed

within nine months of May 27, 2021, or by February 27, 2022.  The indictment, filed on June 23, 2021, was therefore within the § 6531 limitations period as to Defendant Shrock.

As a second and alternative reason why Count 1 should not be dismissed, the limitations period for Count 1 has been suspended by the Wartime Suspension of Limitations Act.  This is true as a matter of law, and does not depend on any facts specific to Defendant Shrock or the allegations against him.

## II.   Count 2: 18 U.S.C. § 1960, Unlicensed Money Transmitting Business

Defendant Wellington further seeks dismissal of Count 2 of the indictment, which names him but not Defendant Shrock.  He offers several arguments in support of dismissal of Count 2.  First, he contends that the indictment does not set forth the elements of a crime under 18 U.S.C. § 1960.  Second, within the same section of his Motion, Defendant Wellington argues that the indictment does not specify the conduct by which he is alleged to have violated § 1960.  Third, Defendant Wellington argues that Count 2 should be dismissed under the statute of limitations because the indictment does not specify what acts took place within the limitations period.  Each argument should fail.

### A.  Count 2 Contains All Necessary Elements

Section 1960 describes a single offense, set forth in § 1960(a):  "Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of a unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both."  18 U.S.C. § 1960(a).  Subsection (b) contains definitions of several terms used in the offense.  Subsection (b)(1) defines an "unlicensed money transmitting business."  18 U.S.C. § 1960(b)(1).  The statute lists three different ways in which a money transmitting business might be "unlicensed."  *See* 18 U.S.C. § 1960(b)(1)(A) through (b)(1)(C).  The list in § 1960(b)(1) does not contain elements of distinct crimes – it is a list of alternative means by

which the government could satisfy the "unlicensed" element of the single, unitary § 1960 offense. *See Mathis v. United States*, 579 U.S. 500, 506, 136 S. Ct. 2243, 2249, 195 L. Ed. 2d 604 (2016) (explaining the difference between a statute with multiple disjunctive elements and one that enumerates various factual means of committing a single element).

To prove a § 1960 violation, the government must prove the following elements:  (1) the defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business; (2) the business affected interstate or foreign commerce; and (3) the business was unlicensed as defined by § (b)(1).  In this instance, the third element means that the business failed to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section. 18 U.S.C. § 1960(b)(1)(B).  The indictment properly alleges each element.  Defendant Wellington does not specify which element he thinks is missing from the indictment.

Defendant Wellington makes an argument that § 1960 might require a different mens rea for violations proved through (b)(1)(A)'s definition of an unlicensed money transmitting business versus (b)(1)(B)'s definition.  He suggests that a § 1960 violation charged by way of definition (b)(1)(B) adds a higher mens rea.  This is incorrect.  A § 1960 violation proved by way of (b)(1)(B) is a general intent crime just like a violation proved by way of (b)(1)(A).  *United States v. Talebnejad*, 460 F.3d 563, 572 (4th Cir. 2006) ("Therefore, § 1960(b)(1)(B) sets forth a constitutionally valid general intent crime, just as § 1960(b)(1)(A) does.  Nothing in the statutory language—such as the use of the word 'willful'—suggests that the Government must additionally prove knowledge of the law.") (citations omitted).  That is, the government must prove that the defendant knew that he or she was conducting a money transmitting business that

affected interstate commerce and that was unregistered, but need not prove knowledge of the registration requirement or of § 1960 itself, and need not prove willful failure to register. *Id.*

### B. *Count 2 Is Sufficiently Specific*

Defendant Wellington complains that Count 2 does not describe specific acts that constitute the offense.  While a § 371 conspiracy indictment must contain a description of overt acts in furtherance of the conspiracy, an indictment regarding other crimes is sufficient without such allegations.  A criminal defendant enjoys the constitutional right "to be informed of the nature and cause of the accusation" against him.  U.S. Const. amend. VI.  The Federal Rules of Criminal Procedure protect this right by requiring the government to obtain an indictment against a defendant that contains "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  Notably, an indictment meets this standard "if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."  *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)) (internal quotation marks omitted).  If those three standards are met, then the indictment "need not go further and allege in detail the factual proof that will be relied upon to support the charges."  *United States v. Doe*, 572 F.3d 1162, 1173–74 (10th Cir. 2009) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)) (internal quotation marks omitted).  The indictment, in fact, really need only "quote[] the language of a statute and include[] the date, place, and nature of illegal activity."  *Id.* (quoting *Redcorn*, 528 F.3d at 733).  The Tenth Circuit in *Dashney* summed up this area of law with a simple statement:  "An indictment need only meet minimal constitutional standards, and we determine the sufficiency of an indictment by practical rather than technical considerations."  117 F.3d at 1205 (emphases added).  "To determine the sufficiency of an indictment the court

examines the entire document to ascertain whether it contains the elements of the offense charged and apprises the accused of the nature of the charge so as to enable him to prepare a defense and to plead the judgment in bar." *United States v. Metro. Enterprises, Inc.*, 728 F.2d 444, 453 (10th Cir. 1984) (citing *Russell v. United States*, 369 U.S. 749, 764, 83 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962).

Count 2 is specific enough to meet constitutional standards. The indictment specifies the business that Defendant Wellington allegedly operated: National Business Services LLC. Doc. 13. It alleges the dates the business was in operation and its place of business. And it alleges National Business Services LLC's licensing failure, which was failure to register under 31 U.S.C. 5330. These allegations are sufficient to enable Defendant Wellington to assert a double jeopardy defense against any future charges relating to his affiliation with National Business Services LLC during the specified period of time. An indictment is sufficient without a recitation of the facts that the government would rely on to support the allegations. *See United States v. Mobley*, 971 F.3d 1187, 1197 (10th Cir. 2020) ("Our precedent is clear that the indictment is sufficient without such factual proof.").

*C. Count 2 Was Timely Filed Under the Statute of Limitations*

Defendant Wellington argues that Count 2 should be dismissed for failure to comply with the statute of limitations. He correctly asserts that the applicable statute of limitations is 18 U.S.C. § 3282(a), which provides that an indictment must be found within five years after the offense has been committed. 18 U.S.C. § 3282(a). The indictment alleges that Defendant Wellington operated the unlicensed money transmitting business until August 28, 2017. Doc. 13. When evaluating a motion to dismiss an indictment, courts "test the indictment solely on the basis of the allegations made on its face, and such allegations are to be taken as true. … The question is not whether the government has presented sufficient evidence to support the charge,

but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *Mobley*, 971 F.3d at 1195–96 (citations omitted).  Taking the allegations in the indictment as true, the indictment would be timely if filed by August 28, 2022, which it was.  Defendant Wellington will have another opportunity to advance his statute of limitations defense:  he can assert the defense at trial, and ask the jury to determine whether the offense was committed entirely prior to June 23, 2016 (five years before the indictment was filed) based on the facts proven at trial.  But in the context of a motion to dismiss the indictment before trial, the indictment's allegations must be taken as true and those allegations on their face are timely.

## III.  Forfeiture Allegation 1

Defendants correctly argue that Forfeiture Allegation 1 should be dismissed.

## IV.  Forfeiture Allegation 2

Defendant Wellington argues that Forfeiture Allegation 2 should be dismissed.  His argument is that Forfeiture Allegation 2 is contingent upon Count 2 of the indictment.  Therefore, Forfeiture Allegation 2 should not be dismissed for the same reasons that Count 2 should not be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court deny the defendants' Joint Motion to Dismiss the Indictment (Doc. 41) as to Counts 1 and 2 and as to Forfeiture Allegation 2, and order Forfeiture Allegation 1 dismissed.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney


*/s/ Filed Electronically*
JEREMY PEÑA
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico  87102
(505) 346-7274


I HEREBY CERTIFY that on June 1, 2022, I filed the
foregoing electronically through the CM/ECF system, which
caused all counsel of record to be served by electronic means,
as more fully reflected on the Notice of Electronic Filing.

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney