IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 1:21-cr-00853-WJ |
| DAVID WELLINGTON and<br>JERRY SHROCK, | ) |
|       Defendants. | ) |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
### (Doc. 41)

**THIS MATTER** comes before the Court on Defendant Wellington and Defendant Shrock's Joint Motion to Dismiss the Indictment (Doc. 41). Having reviewed the parties' pleadings and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

### BACKGROUND

On May 27, 2021, a criminal complaint instituted before U.S. Magistrate Judge Jerry H. Ritter charged Defendant Jerry Shrock with a violation of 18 U.S.C. § 371, Conspiracy to Commit Tax Evasion and Defraud the United States. Doc. 1. The Complaint alleged a timeframe for the charge as 2006 until June 2, 2015. *Id*. On June 18, 2021, Defendant Shrock waived his right to have probable cause for the complaint determined in a preliminary hearing. Doc. 7.

On June 23, 2021, a grand jury returned an indictment as to both Defendant Shrock and Defendant David Wellington. Doc. 13. In Count One, the indictment charged both defendants with Conspiracy to Defraud the United States, contrary to 18 U.S.C. § 371, between January 28,

2005, and March 14, 2017. *Id*. at 3. In Count Two, the indictment charged Defendant Wellington with Operation of an Unlicensed Money Transmitting Business, contrary to 18 U.S.C. § 1960, from about November 28, 2006, until August 28, 2017.

On May 4, 2022, the defendants filed a Joint Motion to Dismiss the Indictment. Doc. 41. In their Motion, the defendants ask the Court to dismiss Count One of the indictment, arguing it is barred by the statute of limitations. Defendant Wellington further asks the Court to dismiss Count Two of the indictment for "failure to set forth elements," and due to the statute of limitations. The defendants also request that the Court dismiss the two forfeiture allegations. The United States requests that the Court deny the Motion as to Count 1, Count 2, and Forfeiture Allegation 2, and grant the Motion as to Forfeiture Allegation 1.

## DISCUSSION

### I. Count 1: 18 U.S.C. § 371, Conspiracy to Defraud the United States

Defendants' first argument is that the overt acts alleged in Count I fall outside of the applicable statute of limitations for conspiracy. Mr. Wellington and Mr. Shrock were indicted in Count I for conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Section 371 in relevant part states,

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The elements the government is required to prove in a § 371 conspiracy are set forth in Tenth Circuit Criminal Pattern Jury Instruction 2.19:

**First:** the defendant agreed with at least one other person to violate the law.

**Second:** one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

**Third:** the defendant knew the essential objective of the conspiracy.

**Fourth:** the defendant knowingly and voluntarily participated in the conspiracy.

**Fifth:** there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Importantly to this Motion, proof of an overt act is a required element in conspiracies charged under 18 U.S.C. § 371.

  a. <u>Statute of Limitations Legal Standard</u>

Defendants base their argument on the statute of limitations for conspiracies. Whether the statute of limitations had expired prior to the issuance of the indictment is a legal issue to be decided by the Court. *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009); *see also United States v. Alessi*, 599 F.2d 513, 515 (2d Cir. 1979). In reviewing a motion to dismiss the indictment on statute of limitations grounds, courts "test the indictment solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1268 (10th Cir. 2018) (citation omitted). An indictment alleging a conspiracy in violation of 18 U.S.C. § 371 must allege at least one overt act. In the Tenth Circuit, a conspiracy indictment "must allege that the conduct constituting the conspiracy fell within the statute of limitations[.]" *United States v. Stoner*, 98 F.3d 527, 533 (10th Cir. 1996), *adhered to in part on reh'g*, 139 F.3d 1343 (10th Cir. 1998). Where the accuracy of a date is not at issue, but there is a question as to which date should be used as the accrual date for the purpose of measuring the limitations period, there is a question of law, not fact. *See United States v. Florez*, 447 F.3d 145, 150 (2d Cir. 2006). When the indictment alleges that "the conspiracy was at work within the limitations period and that during that period, the conspiracy

was neither a project still resting in the minds of the conspirators nor a fully completed operation no longer in existence," the indictment is not subject to dismissal on its face. *Stoner*, 98 F.3d at 534 (quotations omitted). Unless a defendant affirmatively withdrew from a conspiracy, "any of his co-conspirators' overt acts—not just his own acts—may be used to satisfy the statute of limitations as to him. *United States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008). The overt act itself need not be "criminal in character"; the "function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work[.]" *Yates v. United States*, 354 U.S. 298, 334, 77 S. Ct. 1064, 1085, 1 L. Ed. 2d 1356 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (citation omitted).

    b.   <u>Nine-Month Extension of Statute of Limitations</u>

The Government contends that the statute of limitations was extended until nine months after the filing of the Complaint on May 27, 2021. It cites to 26 U.S.C. § 6531, which provides, "Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States." *See also United States v. Miller*, 491 F.2d 638, 645 (5th Cir. 1974) ("[T]he filing of a sufficient complaint before expiration of the 6 year period extended the time within which the Government could obtain an indictment for an additional nine months."). However, the Supreme Court in *Jaben v. United States* stated,

> [T]he evident statutory purpose of the nine-month extension provision is to afford the Government an opportunity to indict criminal tax offenders in the event that a grand jury is not in session at the end of the normal limitation period . . . Clearly the statute was not meant to grant the Government greater time in which to make its case (a result which could have been accomplished simply by making the normal period of limitation six years and nine months), but rather was intended to deal with the situation in which the Government has its case made within the normal limitation

period but cannot obtain an indictment because of the grandy jury schedule. 381 U.S. 214, 219-20 (1965).

There is no evidence that this was the situation in the case at bar, and as such, this argument fails.

    c. *Wartime Suspension of Limitations Act*

In normal times, the applicable statute of limitations for conspiracy under Count 1 is 6 years. 26 U.S.C. § 6531. That statute provides that, "for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner," the period of limitation shall be 6 years. 26 U.S.C. § 6531. If this statute of limitations is applicable, the government would have to prove that one of the conspirators engaged in at least one overt act furthering the conspiracy's objective within the six-year statute of limitations. *See United States v. Thompson*, 518 F.3d 832, 857 (10th Cir. 2008) ("For the conspiracy count, the government was required to prove that, within the statute of limitations period, one of the conspirators committed an overt act in furtherance of the conspiracy." (citing *Grunewald v. United States*, 353 U.S. 391, 396-97 (1957)). The indictment in this case was filed on June 23, 2021. Thus, defendants argue that overt acts occurring six years before the indictment (prior to June 23, 2015) cannot form the basis for the indictment. Separately, Defendant Wellington argues that the statute of limitations is 5 years because the crime was charged under 18 U.S.C. § 371, not under Title 26 which is the internal Revenue Code. He asserts that 18 U.S.C. § 3282(a) forms the 5-year statute of limitations.

Nevertheless, these statutes of limitations do not always apply. The statutes of limitations applicable to frauds against the United States are suspended under the Wartime Suspension of Limitations Act (WSLA) at certain times. The statute provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. § 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, … shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.

18 U.S.C. § 3287. In 2001, Congress authorized "the use of the Armed Forces" in response to the terrorist attacks of September 11, 2001. *See* Authorization for Use of Military Force, Pub. L. No. 107–40, 115 Stat. 224 (2001). The following year, Congress authorized the President to use military force to "defend the national security of the United States against the continuing threat posed by Iraq" and "enforce all relevant United Nations Security Council resolutions regarding Iraq." *See* Authorization for the Use of Military Force against Iraq (AUMF), Pub. L. 107–243, 116 Stat. 114 (2002). These Authorizations have never been repealed, and no Presidential proclamation has declared the termination of hostilities. *See United States v. Nishiie*, 996 F.3d 1013, 1028 (9th Cir. 2021), *cert. denied*, No. 21-6453, 2022 WL 1205873 (U.S. Apr. 25, 2022) ("Since no termination of hostilities has been announced, the suspension of the running of applicable statute of limitations now approaches two decades or more."). The *Nishiie* Court founds that both of these Authorizations triggered WLSA. *Id*. at 1028.

The WSLA applies to "all frauds against the United States, including those unrelated to the war," and therefore applies to Count 1 of the indictment, which alleges a conspiracy to defraud the United States. *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 613 (S.D.N.Y. 2013). No "war nexus" is required. *Nishiie*, 996 F.3d at 1027. While there are certainly policy concerns regarding the restriction of unrelated statutes of limitations based on a declaration of war in 2001, the fact remains that the only appellate court to address this issue found that such concerns must be "subordinated to the WSLA's unambiguous language." *Id*. at

1028.

Defendants take issue with the reasoning in *Nishiie*. They contest *Nishiie's* finding in 2021 that the 9/11 and Iraq Authorizations for Use of Force were triggering events for the WLSA, and cite statements that President Obama made in 2010. *Id*. at 1028. ("These triggering events under the WLSA effectively suspend the running of any statute of limitations applicable to the fraud and property offense categories until five years after the termination of hostilities is pronounced 'by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.'" (citing 18 U.S.C. § 3287)). In interpreting the legislative intent behind the statute, the *Nishiie* Court reasoned that at the time the WLSA was amended in 2008, Congress was aware that the statute of limitations had been tolled for 13 years and likely would be tolled for longer. *Id*. This Court agrees with the 9th Circuit's reasoning.

Defendants next dispute the legal reasoning and legislative interpretation in *Nishiie*—specifically whether the word "which" modifies all three offenses listed in the statute (fraud, property, and contract), or just the third offense. *See generally* Doc. 51. The result dictated whether a nexus between the charged criminal conduct and a specific, ongoing war was required. The *Nishiie* Court thoroughly and exhaustively came to the conclusion that no nexus was required for the first two offenses, including fraud. The decision was appealed to the U.S. Supreme court and certiorari was denied. *See* No. 21-6453, 2022 WL 1205873 (U.S. Apr. 25, 2022). As the reasoning is sound, and there are no other appellate courts that have addressed this issue, this Court will follow the conclusions of the 9th Circuit.

Therefore, because the statute of limitations was tolled, Defendants' request to Dismiss Count I on this basis is **DENIED**.

   d. *Nature of the Conspiracy*

  Even if the statute of limitations was five or six-years, the Government's Indictment still alleged sufficient acts to show a conspiracy within that timeframe. Defendants argue that the indictment fails to assert overt acts that occurred after June 23, 2015—or, based on Defendant Wellington's statute of limitations argument that the acts occurred after June 23, 2016. The Court will use the later date for argument's sake.

   i. *Background*

  By way of background, the indictment alleges a conspiracy around Defendant Wellington's operation of his business, National Business Services LLC. Doc. 13. Defendant Wellington and his business partner, referred to in the indictment as UCC1, allegedly marketed their company as offering a method for clients to circumvent assessment and payment of income taxes. Defendant Wellington and UCC1 allegedly organized and registered limited liability companies (LLCs) under New Mexico state law on behalf of clients who sought to dissociate from certain future income. Doc. 12, 45. The corporate documents allegedly identified National Business Services, Defendant Wellington, or UCC1 as the organizer or registered agent of the new LLC, but no publicly filed documents would identify the members of the LLC or its beneficial owners. Doc. 45. Defendants allegedly used the anonymous corporate documents to obtain an Employer Identification Number for the LLC, so that future IRS Forms 1099 would be associated with the anonymous LLC rather than its actual owner. Doc. 12, 45. National Business Services and UCC1 would use the anonymous corporate documents to open a bank account for the LLC and provide the clients with pre-signed checks, debit cards, and online banking credentials, so that the client could make deposits and withdrawals without revealing his or her identity. *Id*. According to the indictment, Defendant

Shrock was one such client of National Business Services. Doc. 12. Defendant Shrock had an outstanding IRS lien in the amount of about $1 million. *Id*. The government contends that he engaged National Business Services to help him accrue income while avoiding the lien. Doc. 45. The indictment alleges that on or about January 7, 2011, National Business Services formed White Top Enterprise LLC on Defendant Shrock's behalf, using documents that did not identify Defendant Shrock. Doc 12. On or about May 9, 2011, UCC1 opened a bank account for White Top Enterprise LLC, using documents that did not identify Defendant Shrock. *Id*. Between May 9, 2011, and June 2, 2015, Defendant Shrock deposited approximately $4,875,940 into the White Top Enterprise LLC account. *Id*. Defendant Shrock withdrew all of that money, by way of at least about 405 checks, a $352,216 wire transfer that UCC1 choreographed on his behalf, numerous ATM withdrawals, and a $13,386 withdrawal on June 2, 2015. *Id*. UCCI then closed the White Top bank account. *Id*.

After the closure of the White Top Enterprise LLC bank account, on or about July 13, 2016, Defendant Wellington sent Defendant Shrock a letter offering to buy back any LLCs that Defendant Shrock no longer needed. *Id*. On or about March 14, 2017, Defendant Shrock sent UCC1 a text message requesting information about the execution of a federal search warrant for evidence relating to National Business Services. *Id*.

Defendants argue that the Indictment supports the idea that either or both Defendants withdrew from the conspiracy on June 2, 2015 when the White Top Enterprises bank account was closed. If the Court finds otherwise, the Defendants note the following actions listed in the Indictment that could conceivably be considered overt acts that occurred after June 23, 2016: 1) the letter that Wellington sent Shrock offering to buy back any LLC's that Shrock no longer needed; and 2) the text message Shrock sent to UCC1 requesting information about the

execution of a federal search warrant for evidence relating to National Business Services.

    ii.    *Whether Shrock or Wellington Withdrew from the Conspiracy*

Defendants argue that the closing of the White Top Enterprises bank account shows that either or both Defendants withdrew from the conspiracy. The indictment does not allege that any co-conspirator withdrew from the conspiracy-- it alleges that the conspiracy between Defendant Wellington and UCC1 continued after Defendant Shrock's account was closed by pointing to the letter Wellington sent and the text message Shrock sent. In reviewing a motion to dismiss the indictment on statute of limitations grounds, courts "test the indictment solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1268 (10th Cir. 2018) (citation omitted). While Defendants may certainly argue that Mr. Shrock withdrew from the conspiracy by closing the back account, the indictment on its face does not support the defense of withdrawal. To show the affirmative defense of withdrawal, a defendant bears the burden of proving that he took an "affirmative action to disavow or defeat the purpose of the conspiracy." *Smith v. United States*, 568 U.S. 106, 113-14, 133 S. Ct. 714, 720-21, 184 L. Ed. 2d 570 (2013) (citation omitted) ("[A] defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely inactive after joining it.").

The Court agrees with the government that it would be a reversal of burdens to find that the closing of the bank account—an act bearing meaning that is up for interpretation—as an allegation sufficient to carry either Defendant's burden to prove withdrawal. The closing of the bank account could be the sign of a withdrawal, but it could equally be another step in a complicated, ongoing conspiracy. It may signify one criminal avenue becoming

inactive, but does not wholly establish that Shrock affirmatively withdrew from the conspiracy. *United States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008) (citing *United States v. Hauck*, 980 F.2d 611, 614 (10th Cir.1992). If Shrock "did not take the affirmative steps necessary to withdraw from the conspiracy, any of his co-conspirators' overt acts—not just his own acts—may be used to satisfy the statute of limitations as to him." *Id*. As such, the Court will determine whether Shrock or Wellington's alleged actions post June 23, 2016 are ostensibly overt acts.

    iii.    *Wellington's Letter to Shrock*

Turning then to the question of the letter, the Indictment alleges that on July 13, 2016, Wellington sent Shrock a letter offering to buy back any LLCs Shrock no longer needed. Defendants argue that the letter cannot be viewed as an attempt to impede, impair, obstruct, and defeat the lawful functions of the IRS in the collection of income taxes. However, the Indictment alleges that Wellington and UCC1 were in the business of providing New Mexico LLCs to clients who wished to elude the IRS. Purchasing unused LLCs from Shrock can be construed as an effort to acquire and provide the LLCs to a new client for the same purpose—thus signifying the ongoing nature of the conspiracy. Again, while the defendants may argue that this action meant something entirely different, at this stage in the proceedings, the Court accepts the pleaded allegations as true. Because Shrock did not, on the face of the indictment, withdraw from the conspiracy, this overt act can be imputed to him as well. Thus, the statute of limitations did not begin running until at least July 13, 2016, and the indictment filed on June 23, 2021 is timely within either the 5 or 6 year statute of limitations argued by the Defendants.

Because the Court finds that the letter could ostensibly be an overt act, it does not

address the text message allegedly sent to UCC1. Aside from the WLSA finding, the Motion to Dismiss Count I could be denied on this basis.

## II.       Count 2: 18 U.S.C. § 1960, Unlicensed Money Transmitting Business

Next, Defendant Wellington seeks dismissal of Count 2 of the Indictment, which names him but not Defendant Shrock, in violation of operating an unlicensed money transmitting business. Count 2 alleges that Wellington "unlawfully, willfully, and knowingly conducted, controlled, managed, supervised, directed, and owned part of an unlicensed money transmitting business affecting interstate and foreign commerce, to wit, National Business Services LLC, while failing to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, and while failing to register National Business Services LLC as a money transmitting business under federal law."

Defendant offers several arguments in support of dismissal of Count 2. First, he contends that the indictment does not set forth the elements of a crime under 18 U.S.C. § 1960 and the conduct forming the basis for those elements. Second, he argues that Count 2 should be dismissed under the statute of limitations because the indictment does not specify what acts took place within the limitations period. The Court will address each in turn.

   a. *Necessary Elements of § 1960*

Defendant's first argument is that the Indictment fails to set forth the elements of a crime under 18 U.S.C.§ 1960 and the conduct forming the basis for those elements. Specifically, he claims that the Government failed to list the facts showing he received a fee from a customer, which is necessary to prove he was operating a "money transmitting business" under § 1960.  An indictment is sufficient "if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must

defend, and if it enables a defendant to assert [a double jeopardy defense.]" *United States v. Poole*, 929 F.2d 1476, 1478 (10th Cir. 1991). "[I]t is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008) (citations omitted). "Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *Id*. (citations omitted).

In this instance, the Indictment quoted the language of the statute in Count 2 and outlined the basic facts with dates and locations in the initial paragraphs. The question, then, is whether the statute "fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished." *Id*. If so, it need not do anything more than recite the statute and date, place, and nature of the illegal activity. If, on the other hand, the statue is ambiguous as to the necessary elements, the Indictment must provide more detail.

Section 18 U.S.C. § 1960 is as follows:

> (a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
> (b) As used in this section—
> (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
> > (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
> > (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations

>prescribed under such section; or
>(C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;
>
>(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and
>
>(3) the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

Defendant argues that the Indictment does not show he operated a "money transmitting business." The Indictment alleged that he operated a money transmitting between November 28, 2006 and August 28, 2017 in Bernalillo County, New Mexico. The Indictment recites a basic background of facts outlining the allegations. Thus, only if the term "money transmitting business" is ambiguous would it be necessary to assert more than this recitation of the element and the date, location and nature of the activity.

Section 18 U.S.C. § 1960(b)(1) defines "unlicensed money transmitting business." It focuses on what would constitute "unlicensed" by providing three distinct, clear options. Those definitions do not bear weight, however, on what constitutes a "money transmitting business." At least one district court has criticized the statute for not explicitly defining "money transmitting business." *United States v. Ali*, 2008 U.S. Dist. LEXIS 86463, 2008 WL 4773422, at *12 (E.D.N.Y. Oct. 27, 2008) ("That the statute essentially defines the term 'money transmitting business' as 'money transmitting business' in subsection (b)(1) is among the more glaring problems the statute presents."). On the other hand, some courts have determined that the statute is unambiguous. *United States v. e-Gold, Ltd.*, 550 Supp. 2d 82, 88 (D.D.C. 2008) ("Section 1960 is clear on a stand-alone basis."); *United States v. Emilor, S.A.*, 2008 U.S. Dist. LEXIS 112865, at *13 (E.D. Tex. Apr. 30, 2008) ("[T]he Court finds that the statue is complete and straightforward.").

The term "money transmitting" is interpreted broadly. *United States v. $215,587.22 in United States Currency*, 306 F. Supp. 3d 213, 219 (D.D.C. 2018); *e-Gold, Ltd.*, 550 F. Supp. at 88; *United States v. Banki*, 685 F.3d 99, 113 (2d Cir. 2011). The term "money transmitting" is defined in b(2) as follows: "[T]he term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courter." Examples of money transmitting include distributing millions of dollars on behalf of clients through wire transfers and checks to vendors, moving drug trafficking proceeds from Canada to the United States, enabling customers to send bitcoins to recipients in a manner that masked illegal transactions, and assisting customers with transferring money to Bulgaria. *$215,587 in U.S. Currency*, 306 F. Supp. at 220; *United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021); *United States v. Harmon*, 474 F. Supp. 3d 76 (D.D.C. 2020); *United States v. Dimitrov*, 546 F.3d 409 (7th Cir. 2008). The Court finds that this term is not ambiguous, and the alleged acts of buying and selling LLCs, creating bank accounts for the LLCs, managing the withdrawals and deposits of bank accounts, and issuing debit cards and pre-signed checks to clients would qualify as "money transmitting." These actions are more than providing a "payment processing" platform as Defendant alleges.

Defendant seems to take the most issue with the Indictment's failure to list the elements of a "business." He argues that the Indictment does not specify whether a fee was received by Defendants, which is essential to demonstrating a "money transmitting business." Indeed, the receipt of a fee is a fact required to prove a business under this statute. In defining a "money transmitting business" under § 1960, the Second Circuit stated that a money transmitting business "receives money from a customer and then, *for a fee*

*paid by the customer*, transmits that money to a recipient in a place that the customer designates . . ." *United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999). Reiterating this definition, the Second Circuit reversed the District Court's denial to instruct the jury that a money transmitting business was an enterprise that is conducted for a fee or profit. *United States v. Banki*, 685 F.3d 99, 113 (2d Cir. 2011). The Ninth Circuit adopted this definition in *United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021).

Nevertheless, the term "business" is self-explanatory. *e-Gold, Ltd.*, 550 F. Supp. at 88; *Banki*, 685 F.3d at 114. It does require the receipt of a fee, but this goes without saying because businesses are, by nature, enterprises carried out for financial gain. *Banki*, 685 F.3d at 114. "[G]iving the term 'business' its 'plain and unambiguous' meaning . . . a 'business' is an enterprise that is carried on for profit or financial gain." *Id*. (citations omitted). Therefore, just because the statue does not explain that a fee must be involved does not render the term "money transmitting business" ambiguous. Because it is an unambiguous statute, there was no need for the Indictment to "go further and allege in detail the factual proof that will be relied upon to support the charges." *Redcorn*, 528 F.3d at 733. All that was required was that it recite the statute and the date, location, and nature of the alleged crime. The Indictment satisfied this standard, so there was no need to specify the evidence which will be relied on at trial to show that not all of the money in the bank accounts was retained by the LLCs or owners—and that some was recouped by Defendants as a fee for their services.

As such, Defendant is on appropriate notice of the charges against him and would be able to assert a double jeopardy defense in the future. The Court will now address whether Count 2 should be dismissed for violating the statute of limitations.

   b. *Statute of Limitations*

Defendant alternatively argues that Count 2 should be dismissed because the Indictment fails to allege sufficient facts to allow him to determine whether he operated a money transmitting business during the requisite statute of limitations. This argument is similar to the prior one based on the alleged insufficient showing of facts in the Indictment. Parties agree that the statute of limitations is five years pursuant to 18 U.S.C. § 3282(a). The Indictment alleges that Defendant Wellington operated the unlicensed money transmitting business until August 28, 2017. Doc. 13. As discussed in the prior section, at this stage, "The question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Mobley*, 971 F.3d 1187, 1197 (10th Cir. 2020) ("Our precedent is clear that the indictment is sufficient without such factual proof."). The Indictment has set forth allegations that fall within the statute of limitations, and thus Defendant's request that Count 2 be dismissed is **DENIED**.

**III.    Forfeiture Allegation 1**

Defendants next argue that Forfeiture Allegation 1 should be dismissed. The United States agrees. Indeed, in Forfeiture Allegation 1 the government is requesting forfeiture from Mr. Wellington and Mr. Shrock based on the acts alleged in Count I in violation of 18 U.S.C. § 371. However, property to be forfeited under 18 U.S.C. § 981(a)(1)(C) is as following:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title [18 USCS § 1956(c)(7)]), or a conspiracy to commit such offense.

The Court notes that § 371 is not listed in § 981(a)(1)(C). Because § 981(a)(1)(C) does not

apply, 28 U.S.C. § 2461 (which dictates the mode of recovery for forfeitures) does not apply. Thus, Defendants' request to dismiss Forfeiture Allegation 1 is **GRANTED**.

### IV. Forfeiture Allegation 2

Defendant Wellington argues that Forfeiture Allegation 2 should be dismissed. His argument is that Forfeiture Allegation 2 is contingent upon Count 2 of the indictment. As discussed, Count 2 will not be dismissed. For the same reasons, the request to dismiss Forfeiture Allegation 2 is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendants' Joint Motion to Dismiss the Indictment (Doc. 41) as to Counts 1 and 2 and as to Forfeiture Allegation 2, and **GRANTS** the Motion as to Forfeiture Allegation 1.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE